UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | LA CV19-03436 JAK<br>LA CR87-00422 JAK | X | Date | October 2, 2019 |
| Title | Raul Lopez-Alvarez v. United States of America<br>United States of America v. Raul Lopez-Alvarez | | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (CV DKT. 1; CR DKT. 4420)**

## I.    **Introduction**

On September 22, 1988, Raul Lopez-Alvarez ("Petitioner") was convicted of the following: (i) violent crimes in aid of racketeering for the kidnapping and murder of DEA Special Agent Enrique Camarena-Salazar ("Camarena") in violation of 18 U.S.C. §§ 1952B; (ii) violent crimes in aid of racketeering for the kidnapping and murder of DEA informant Alfredo Zavala ("Zavala") in violation of 18 U.S.C. §§ 1952B; (iii) conspiracy to kidnap a federal agent in violation of 18 U.S.C. § 1202(c); (iv) kidnapping a federal agent in violation of 18 U.S.C. § 1201(a)(5); (v) felony murder of a federal agent in violation of 18 U.S.C. §§ 1111, 1114; and (vi) accessory after the fact in violation of 18 U.S.C. § 3. CR-00422, Dkt. 3863.[1] CV-03436, Dkt. 1-1 at 5-6; *Id.*, Dkt. 10 at 6. The convictions arose from the February 7, 1985 kidnapping and subsequent murder of Camarena and Zavala in Guadalajara, Mexico. *Id.*, Dkt. 10 at 6.

On October 28, 1988, Petitioner was sentenced to four consecutive 60-year terms plus one concurrent term of life and one of ten years. CR-00422, Dkt. 3697. On November 7, 1988, Petitioner appealed. *Id.*, Dkt. 3584; *United States v. Lopez-Alvarez*, 970 F.2d 583, 586 (9th Cir. 1992). On July 8, 1992, on the basis of insufficient evidence, the Ninth Circuit reversed Petitioner's convictions for violent crimes in aid of racketeering for the kidnapping and murder of Zavala in violation of 18 U.S.C. §§ 1952B and of being an accessory after the fact in violation of 18 U.S.C. § 3. *Lopez-Alvarez*, 970 F.2d at 587.

The present motion was filed on April 26, 2019 ("Motion"). CR-00422, Dkt. 4420; CV-03436, Dkt. 1-1. The Motion seeks relief based on a disclosure by the Office of the Inspector General of the Federal

---

[1] "CR" refers to the Record in *United States v. Caro-Quintero*, et al, CR 87-422-JAK. "RT" refers to the Reporter's Transcript of proceedings in the 1988 jury trial, *United States v. Caro-Quintero*, CR 87-422-JAK, and is followed by the volume and page number. "CV" refers to the civil cases Petitioner has filed and is followed by the case number and docket entry.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-03436 JAK<br>LA CR87-00422 JAK | Date | October 2, 2019 |
|---|---|---|---|
| Title | Raul Lopez-Alvarez v. United States of America<br>United States of America v. Raul Lopez-Alvarez | | |

Bureau of Investigation ("FBI") that the trial testimony of FBI Special Agent Malone ("Malone") was unreliable. CV-03436 Dkt. 1-1 at 5. Petitioner argues that his sentence should be vacated and that he should be granted a new trial because Malone's testimony was material to the remaining convictions. *Id.*

On July 18, 2019, the government filed an opposition to the Motion. CV-03436, Dkt. 10. Petitioner filed a reply on August 13, 2019. *Id.*, Dkt. 11.

A review of these filings shows that, pursuant to Local Civil Rule 7.15, certain preliminary matters can be decided without a hearing. Accordingly, the Motion has been taken under submission, in part, with certain issues addressed in this Order.

For the reasons stated in this Order, the Petition is **DENIED IN PART AND WITHOUT PREJUDICE.**

**II.**    **Background**

    A.    Petitioner's Trial

On March 16, 1988, a Grand Jury returned a Second Superseding Indictment charging nine defendants, including Petitioner, associated with the Guadalajara Narcotics Cartel ("Cartel") with committing crimes in 1984 and 1985. CV-03436, Dkt. 10 at 6; CR-00422, Dkt. 62. On July 22, 1988, the trial of Petitioner and two co-defendants -- Rene Martin Verdugo-Urquidez and Jesus Felix-Gutierrez -- commenced. CV-03436, Dkt. 10 at 6. Petitioner was charged and tried on the following six counts of the Second Superseding Indictment:

    Count One: Violent crimes in aid of racketeering for the kidnapping and murder of
        Camarena, in violation of 18 U.S.C. § 1952B

    Count Two: Violent crimes in aid of racketeering for the kidnapping and murder of
        Zavala, in violation of 18 U.S.C. § 1952B

    Count Three: Conspiracy to kidnap a federal agent, in violation of 18 U.S.C. § 11202(c)

    Count Four: Kidnapping a federal agent, in violation of 18 U.S.C. § 1201(a)(5)

    Count Five: Felony Murder of Camarena during the course of a kidnapping, in violation
        of 18 U.S.C. §§ 1111, 1114

    Count Seven: Being an accessory after the fact, in violation of 18 U.S.C. § 3.

District Judge Rafeedie presided at the trial. CR-00422, Dkt. 3359 at 1. At the trial, the government presented evidence to support the claim that the murders of Camarena and Zavala were in retaliation for certain DEA enforcement activities. *See* CR-00422, Dkt. 3359 ("Reporter's Partial Transcript of Proceedings"). Extensive evidence was presented as to the nature and scope of the drug trafficking

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-03436 JAK<br>LA CR87-00422 JAK | Date | October 2, 2019 |
|---|---|---|---|
| Title | Raul Lopez-Alvarez v. United States of America<br>United States of America v. Raul Lopez-Alvarez | | |

operation in which Petitioner allegedly participated and the events surrounding the murders. *Id.* To link Petitioner to the murder of Camarena and Zavala, the government relied on testimonial and physical evidence to support the contention that Camarena and Zavala were brought to a house, located at 881 Lope de Vega Street in Guadalajara, as well as Petitioner's statements to DEA Special Agent Abel Reynoso and DEA Informant Jose Reyes Garcia-Alvarez. *Id.*

      B.      Petitioner's Appeal and Amended Judgment

As noted, on August 22, 1988, Petitioner was convicted on Counts One, Two, Three, Four, Five and Seven. On November 7, 1988, Petitioner appealed. CR-00422, Dkt. 3584; *United States v. Lopez-Alvarez*, 970 F.2d 583, 586 (9th Cir. 1992). The issues on appeal included the following: (i) whether the trial court improperly limited the cross-examination of Garcia; (ii) whether Petitioner's convictions were supported by sufficient evidence; (iii) whether the prosecutor impermissibly referred to Petitioner's failure to testify; (iv) whether the trial court lacked subject matter jurisdiction; (v) whether the felony-murder indictment was insufficient; (vi) whether the trial court erroneously rejected Petitioner's proposed jury instructions; (vii) whether the prosecutor made improper prejudicial remarks to the jury; and (viii) whether the prosecution failed to disclose exculpatory evidence to the defense. *Lopez-Alvarez*, 970 F.2d at 587.

With respect to Petitioner's convictions, on July 8, 1992, the Ninth Circuit affirmed in part and reversed in part. It affirmed his convictions as to Counts One, Three, Four and Five, concluding that there was sufficient evidence as to the kidnapping and murder of Camarena. *Lopez-Alvarez*, 970 F.2d at 593. It reversed the convictions as to Counts Two and Seven, holding that the corresponding evidence was insufficient. *Id.* at 593-596.

Although the Ninth Circuit issued the opinion on July 8, 1992, Judge Rafeedie did not enter an amended judgment until October 26, 2005. CR-00422, Dkt. 2439. The amended judgment altered Petitioner's sentence to three consecutive 60-year terms on Counts One, Three and Four, and one concurrent sentence of life on Count Five. *Id.*

      C.      Petitioner's Previous 28 U.S.C. § 2255 Motions

After the decision of the Ninth Circuit, on September 11, 1997, Petitioner filed his first motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. CR-00422, Dkt. 3851. That motion sought to set aside Petitioner's October 28, 1988 conviction. *Id.*, Dkt. 3851 at 2. The district court denied Petitioner's motion on July 23, 1999. *Id.*, Dkt. 2374.

As noted, on October 26, 2005, Judge Rafeedie amended Petitioner's original judgment and commitment order to reflect the July 8, 1992 opinion of the Ninth Circuit ("Amended Judgment"). *Id.*, Dkt. 2439. On October 16, 2006, Petitioner filed an application for leave to file a second or successive § 2255 motion with the Ninth Circuit. CV-03436, Dkt. 10 at 52. Petitioner's application addressed the Amended Judgment, not his original October 28, 1988 conviction. On January 23, 2007, the Ninth Circuit denied Petitioner's application. *Id.*, Dkt. 10 at 71. The Ninth Circuit held that Petitioner had "not made a prima facie showing under 28 U.S.C. § 2255 of (1) newly discovered evidence that, if proven

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-03436 JAK<br>LA CR87-00422 JAK | Date | October 2, 2019 |
| Title | Raul Lopez-Alvarez v. United States of America<br>United States of America v. Raul Lopez-Alvarez | | |

and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the defendant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was not previously unavailable." *Id.*

      D.      July 2014 Report of the Office of Inspector General and Wong Letter

In July 2014, the Office of Inspector General ("OIG") for the Department of Justice ("DOJ") released a report titled: *An Assessment of the 1996 Department of Justice Task Force Review of the FBI Laboratory* ("2014 OIG Report").[2] The Task Force was formed to manage "the identification, review, and follow-up of cases involving the use of unreliable analysis and overstated testimony by FBI Lab examiners in criminal cases." 2014 OIG Report at 1, 4. The Task Force was also to determine whether any irregularities in the FBI Lab "gave rise to any constitutionally required disclosures in specific prosecuted cases," and to inform the government that such disclosures could be made. *Id.* at 4.

As part of the review conducted by the Task Force, the FBI hired scientists to assess the work performed by certain FBI examiners in 312 select cases. *Id.* at 22-24. They included 162 cases in which hair and fiber analyses were performed by Malone. *Id.* The independent review identified "egregious errors" in Malone's analyses. *Id.* at 30. They included the following:

    (1) Malone repeatedly testified that (a) by using microscopic analysis he could match an unknown hair to a known hair and (b) the probability of the unknown hair belonging to somebody other than the known hair's contributor was one in 5,000. These claims were found to lack a scientific basis. *Id.* at 48, 53.

    (2) Malone's notes regarding his examinations were often inadequate or unreadable, making it impossible to verify his results. *Id.* at 50. The notes that were legible generally were inadequate to support his testimony. *Id.* at 49. The reviewers found that "Malone's testimony was consistently overstated," and was "misleading and inaccurate." *Id.*

    (3) Malone repeatedly testified that he had personally done tests and examinations, but no exhibits were presented that reflected or constituted such tests. *Id.* at 51.

    (4) Malone repeatedly testified that "at least 15 characteristics are needed for a hair comparison." *Id.* at 51-52. This claim lacked scientific support. *Id.*

    (5) As to fiber analysis, the reviewers wrote that "they did not believe Malone understood the appropriate use and limitations of an instrument known as a microspectrophotometer and, therefore, that he often came to scientifically inaccurate conclusions in his reports and testimony." *Id.* at 49. Thus, Malone sometimes testified -- including in the instant

---

[2] Although the parties did not lodge a copy of this report in these proceedings, it is available on the website of the OIG. *See* 2014 OIG Report, available at https://oig.justice.gov/reports/2014/e1404.pdf. Consequently, judicial notice of the report is appropriate and is taken.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-03436 JAK<br>LA CR87-00422 JAK | | Date | October 2, 2019 |
|---|---|---|---|---|
| Title | Raul Lopez-Alvarez v. United States of America<br>United States of America v. Raul Lopez-Alvarez | | | |

    case -- that he could use the microspectrophotometer to identify a specific dye that was used to color a fiber. *Id.* at 50. However, the device only allows the determination of the fiber's color, not the specific dye used. *Id.*

Based on these findings, the 2014 OIG Report concluded that Malone had "repeatedly created scientifically unsupportable lab reports and provided false, misleading, or inaccurate testimony at criminal trials." *Id.* at 2, 7, 45. The Report also found that it was reasonable to conclude that the DOJ should have known about these matters and that they should have been addressed earlier. As the 2014 OIG Report explained:

> We believe the [DOJ] should have directed the Task Force . . . to review all cases Malone handled at any point during his tenure in the FBI Lab beginning in 1975, whether as a primary, secondary, or confirming examiner, where the evidence was deemed material to the defendant's conviction. A discussion about potential scope expansion should have occurred no later than fall 1999, since the FBI and the Department learned in May and July 1999, respectively, after the glaring findings by the independent scientists [hired by the FBI], that Malone's forensic analysis and testimony were unreliable.

*Id.* at 72.

On October 1, 2018, Petitioner received a letter from DOJ Special Counsel Norman Wong. Exhibit 1 to Reply, CV-03436, Dkt. 11 at 18 ("Wong Letter"). The Wong Letter and its attachment stated that the DOJ had reviewed Malone's testimony at Petitioner's trial. *Id.* The letter stated that the DOJ was no longer accepting or relying on the trial testimony about the hair comparison that had been provided by Malone. *Id.*; Exhibit 2 to Reply, Dkt. 11 at 20. The attachment to the letter stated that the DOJ found two types of errors in Malone's work related to Petitioner's case:

> 1. "[Malone] stated or implied that the evidentiary hair could be associated with a specific individual to the exclusion of all others – this type of testimony exceeded the limits of science."

> 2. "[Malone] assigned to the positive association a statistical weight or probability or provided a likelihood that the questioned hair originated from a particular source, or an opinion as to the likelihood or rareness of the positive association that could lead the jury to believe that valid statistical weight can be assigned to microscopic hair association – this type of testimony exceeded the limits of science."

*Id.* at 21.

On October 17, 2014, a very similar letter was sent to one of Petitioner's co-defendants at trial, Rene Martin Verdugo-Urquidez ("Verdugo"). *See* Exhibit B to Motion, CV-03436, Dkt. 1-3. On September 14, 2015, Verdugo filed with the Ninth Circuit an application for authorization to file a second motion to vacate, set aside or correct a sentence pursuant to 28 U.S.C. § 2255. *See Rene Martin Verdugo-*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-03436 JAK<br>LA CR87-00422 JAK | Date | October 2, 2019 |
|---|---|---|---|
| Title | Raul Lopez-Alvarez v. United States of America<br>United States of America v. Raul Lopez-Alvarez | | |

*Urquidez v. United States of America*, Case No. 2:15-cv-09274-JAK, Dkt. 1. On December 1, 2015, the Ninth Circuit granted the request and directed that Verdugo file the motion with the district court for the Central District of California. *Id.*, Dkt. 2. After he did so, and following the briefing of the matter, on May 22, 2017, this Court granted the request for a new trial pursuant to 28 U.S.C. § 2255. *Id.*, Dkt. 37.

On April 26, 2019, Petitioner filed the present Motion. CR-00422, Dkt. 4420; CV-03436, Dkt. 1.

### III.   Analysis

#### 1.   Legal Standards

In assessing whether to grant an application for leave to file a second or successive § 2255 motion, a district court must first determine whether the proposed motion would in fact be successive. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 639 (1998). Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petitioner incarcerated pursuant to a federal judgment cannot bring a "second or successive" motion for habeas relief, unless he or she first obtains permission from a court of appeals. *See* 28 U.S.C. § 2255(h); *United States v. Lopez*, 577 F.3d 1053, 1061 (9th Cir. 2009) (holding that "a petitioner must move for authorization from [the Ninth Circuit] to file a 'second or successive' § 2255 motion in the district court").

Not all later petitions are considered "second or successive." *See Cooper v. Calderon*, 308 F.3d 1020, 1023 (9th Cir. 2002) (not all successive petitions are subject to the strict limitations on second or successive habeas petitions); *Hill v. Alaska*, 297 F.3d 895, 898 (9th Cir. 2002) ("That a prisoner has previously filed a federal habeas petition does not necessarily render a subsequent petition 'second or successive' "); *see also Allen v. Ornoski*, 435 F.3d 946, 956 (9th Cir. 2006) (finding that the term "second or successive" is not defined in the AEDPA and, as such, the Ninth Circuit has interpreted it as a "term of art as derivative of the 'abuse-of-the-writ' doctrine developed in pre-AEDPA cases"). Under Ninth Circuit law, "a petition is not second or successive when there is an amended judgment and the petition is the first one following that amended judgment." *Gonzalez v. Sherman*, 873 F.3d 763, 768-9 (9th Cir. 2017) (citing *Magwood v. Patterson*, 561 U.S. 320, 332-33 (2010)); Sherrod v. United States, 858 F.3d 1240, 1241 (9th Cir. 2017) (applying *Magwood* to determine whether a motion was a "second or successive" § 2255 motion).

#### 2.   Application

Petitioner argues that there is presently jurisdiction to address the Motion because it is not "second or successive" within the meaning of 28 U.S.C. § 2255. CV-03436, Dkt. 1-1 at 16. Although Petitioner concedes that the instant Motion is later in time that the prior one, Petitioner maintains that the Motion is the first to challenge the Amended Judgment. *Id.* In opposition, the government argues that Petitioner's Motion is "second or successive" and requests that it be dismissed without prejudice to allow Petitioner the opportunity to seek a certification from the Ninth Circuit that would permit him to proceed with the Motion before this Court. *Id.*, Dkt. 10 at 14.

*Wentzell v. Neven*, 674 F.3d 1124 (9th Cir. 2012) is instructive on these issues. There, the petitioner

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-03436 JAK<br>LA CR87-00422 JAK | Date | October 2, 2019 |
|---|---|---|---|
| Title | Raul Lopez-Alvarez v. United States of America<br>United States of America v. Raul Lopez-Alvarez | | |

entered guilty pleas in a Nevada state court to each of the following: "solicitation to commit murder (Count I), principal to the crime of attempted murder (Count II), and principal to the crime of theft (Count III)." *Id.* at 1125. The Nevada state court sentenced petitioner to ten years on Counts I and III, and 20 years on Count II, with all sentences to run consecutively. *Id.* Following his conviction, the petitioner filed several appeals and motions for reconsideration in federal and in the Nevada state courts. *See Wentzell v. Neven*, No. 2:10-CV-01024-RLH, 2015 WL 1344786, at *1 (D. Nev. Mar. 23, 2015) (full procedural history). The petitioner filed his first federal habeas corpus petition under 28 U.S.C. § 2254 in which he challenged his original conviction. *Wentzell v. Neven*, 674 F.3d at 1125. A district court for the District of Nevada denied his petition as untimely. *Id.* Thereafter, the petitioner filed his first and second state post-conviction habeas petitions in a Nevada state court. *Wentzell*, 2015 WL 1344786, at *2. The Nevada state court denied them both. *Id.*

The petitioner then filed his third post-conviction habeas petition in the Nevada state court in which he challenged all of his convictions. *Wentzell*, 674 F.3d at 1125. That Nevada state court subsequently granted in part the habeas petition because, under Nevada law, a person cannot be convicted of both solicitation to commit murder and as a principal in the attempt to commit the murder. *Id.* It ordered that the judgment of conviction be amended to dismiss Count I and to vacate the sentence under Count I. *Id.* An amended judgment was then entered that was limited to the finding of guilty on Counts II and III. *Id.* The petitioner then filed a federal habeas petition, which again challenged both of these convictions, but this time based on the amended judgment. *Id.* at 1126. The Ninth Circuit concluded that this petition was not "second or successive," notwithstanding that it challenged Wentzell's convictions and sentences on Counts II and III, which had not been affected or altered by the amended judgment. *Id.* at 1127. *Wentzell* determined that this outcome was consistent with *Magwood*, which required courts to "interpret successive applications with respect to the judgment challenged and not with respect to particular components of that judgment." *Id.* (citations omitted). *Wentzell* concluded that, under the AEDPA, a petition is not "second or successive" where it challenges a new, intervening judgment. *Id.* at 1126-27.

Here, the October 26, 2005 Amended Judgment was an intervening judgment, i.e., one entered between Petitioner's original petition, which he filed on September 11, 1997 and the present one. However, the facts here are distinguishable from those presented in *Wentzell*. There, the federal petition was the first one filed regarding the amended judgment. Here, Petitioner filed his first § 2255 motion on September 11, 1997. CV-06776, Dkt. 1. It was denied. *Id.*, Dkt. 4. Then, on October 16, 2006, Petitioner filed an application with the Ninth Circuit for leave to file a second or successive § 2255 motion with respect to the October 26, 2005 Amended Judgment. CV-03436, Dkt. 10 at 52. That request was denied on January 23, 2007. *Id.* at 71. The present Motion, which was filed on April 26, 2019, is a "second or successive" one because Petitioner previously filed a motion challenging the October 26, 2005 Amended Judgment.

For these reasons, the Motion "must be certified as provided in section 2244 by a panel of the appropriate court of appeals" to show "newly discovered evidence" establishing the Petitioner's innocence or a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *See* 28 U.S.C. § 2255(h). Petitioner has not obtained that certification. Therefore, the Motion is **DENIED IN PART AND WITHOUT PREJUDICE** for failure to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-03436 JAK<br>LA CR87-00422 JAK | Date | October 2, 2019 |
|---|---|---|---|
| Title | Raul Lopez-Alvarez v. United States of America<br>United States of America v. Raul Lopez-Alvarez | | |

comply with 28 U.S.C. § 2255(h). It may be refiled if leave to do so is granted by the Ninth Circuit.

### IV.　Conclusion

For the reasons stated in this Order, the Petition is **DENIED IN PART AND WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　：　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　Initials of Preparer　　ak